OPINION
{¶ 1} Plaintiffs-appellants, Charles and Jane Beck (hereinafter collectively "appellants"), appeal from the decision and judgment directing a verdict in favor of defendant-appellee, Camden Place at Tuttle Crossing (hereinafter "Camden Place" or "appellee"). For the reasons which follow, we reverse the judgment of the trial court.
 {¶ 2} On April 19, 1997, Charles Beck accompanied his daughter Tracy Mellis to Camden Place to assist her in finding an apartment. Upon arriving, they entered the clubhouse-leasing office (hereinafter "office") and spoke with leasing agent, Shannon Rigo. Ms. Rigo offered to show Mr. Beck and Ms. Mellis an actual apartment. Accordingly, the group left the office and proceeded toward the apartment they were going to view.
 {¶ 3} As they left the office, at Ms. Rigo's suggestion the group turned left along the sidewalk, then cut across the grass to the left of the office's front door. Proceeding on, they walked three abreast with Ms. Rigo on the left, Ms. Mellis in the middle and Mr. Beck on the right.
 {¶ 4} As the group approached the curb and driveway Mr. Beck took another step on the grassy area adjacent to the curb. At that time, a slippery, unknown substance oozed up from under the grassy area, causing Mr. Beck to fall.
 {¶ 5} After he fell, the unknown substance surrounded Mr. Beck, occupying a three foot square area. Ms. Mellis stated the substance continued to seep up from the ground as her father was sitting in it. Prior to Mr. Beck's fall, none of the three individuals saw the unknown substance in the grass.
 {¶ 6} Mr. Beck suffered a broken ankle and torn ligaments as a result of the fall.
 {¶ 7} On October 21, 2002, a jury trial in this matter commenced in the Franklin County Court of Common Pleas. At the conclusion of appellants' opening statement, appellee moved the trial court for a directed verdict. The trial court took appellee's motion under advisement while appellants proceeded to put on their case-in-chief. When appellants concluded their case-in-chief, the trial court granted appellee's motion for directed verdict. The trial court filed a judgment entry on November 13, 2002.
 {¶ 8} Appellants timely appeal and assert the following assignment of error:
The trial court committed reversible error by directing a verdict for the defendant when the record contained evidence from which reasonable, fair minded jurors, could reach a verdict for the plaintiffs.
 {¶ 9} Civ.R. 50(A)(4) sets forth the standard for a directed verdict:
* * * When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 {¶ 10} In ruling on a motion for a directed verdict, a trial court is required to construe the evidence most strongly in favor of the nonmovant. Civ.R. 50(A)(4); Strother v. Hutchinson
(1981), 67 Ohio St.2d 282, 284. The motion must be denied where there is substantial evidence to support the nonmoving party's case and reasonable minds may reach different conclusions. Posinv. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. The weight of the evidence and the credibility of the witnesses is not for the trial court's determination in ruling upon the motion. Id. Instead, a motion for directed verdict tests whether the evidence presented is legally sufficient to take the case to the jury. Wagner v. Midwestern Indemn. Co. (1998),83 Ohio St.3d 287, 294.
 {¶ 11} The first argument asserted by appellants is the trial court committed reversible error in holding appellants had the burden of proving the identity of the unknown substance which caused Mr. Beck's fall.
 {¶ 12} "To establish negligence in a slip and fall case, it is incumbent upon the plaintiff to identify or explain the reason for the fall." Stamper v. Middletown Hosp. Assn. (1989),65 Ohio App.3d 65, 67-68, citing Cleveland Athletic Assn. Co. v.Bending (1934), 129 Ohio St. 152. As such, a plaintiff will be prevented from establishing negligence when he, either personally or with the use of outside witnesses, is unable to identify what caused the fall. Stamper, at 68. In other words, a plaintiff must know what caused him to slip and fall. A plaintiff cannot speculate as to what caused the fall. However, while a plaintiff must identify the cause of the fall, he does not have to know, for example, the oily substance on the ground is motor oil. Instead, it is sufficient that the plaintiff knows the oily substance is what caused his fall. See Christovich v. GundRealty (Apr. 4, 1996), Cuyahoga App. No. 69530.
 {¶ 13} At trial, Mr. Beck testified he stepped in something and his feet began to slide and he lost his balance. After landing, he noticed he was sitting in a foreign substance that continued to ooze up from the ground when he pushed his hands into the ground attempting to get up.
 {¶ 14} Contrary to the trial court's holding, appellants were not legally required to prove the identity of the unknown substance. Instead, appellants were required to identify that the cause of Mr. Beck's fall was the unknown substance. Construing the evidence most strongly in appellants' favor, appellant presented evidence regarding the cause of his fall which was legally sufficient to permit the case to go to the jury.
 {¶ 15} Appellants assert the trial court erred in concluding the unknown substance was open and obvious to Mr. Beck. Appellee concedes the unknown substance was not open and obvious.[1]
 {¶ 16} The testimony presented by appellants supports the conclusion the unknown substance was not open and obvious. Ms. Mellis testified she did not notice anything in the grass prior to her father falling. Similarly, appellee's agent, Ms. Rigo, did not observe the unknown substance as they were walking across the yard. Likewise, Mr. Beck did not notice anything unusual as he was walking in the grass.
 {¶ 17} As argued by appellants and conceded by appellee, construing the appellants' evidence most strongly in appellants' favor, leads to the finding that the unknown substance was a latent defect, not an open and obvious hazard, and therefore, the evidence was legally sufficient to permit the case to go to the jury.
 {¶ 18} Appellants' final two arguments are interrelated and will be addressed together. Appellants contend appellee negligently inspected the premises and as a result appellee had constructive notice of the latent defect, the unknown substance.
 {¶ 19} To prevail upon a claim of negligence, appellants are required to prove by a preponderance of the evidence defendant owed Mr. Beck a duty of care, it breached that duty, and the breach proximately caused his injuries. "Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." Simmers v. BentleyConstr. Co. (1992), 64 Ohio St.3d 642, 645. The existence of a duty is a question of law. However, the breach of the duty is a question of fact. The specific acts necessary to fulfill the duty imposed as well as the inferences and conclusions to be drawn from the evidence are ordinarily questions for the trier of fact.Tarkany v. Bd. of Trustees of Ohio State Univ. (June 4, 1991), Franklin App. No. 90AP-1398.
 {¶ 20} The parties agree that Mr. Beck was a business invitee of Camden Place. Therefore, appellee owed him a duty of ordinary care to maintain the premises in a reasonably safe condition so Mr. Beck was not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203. While a business owner is not an insurer of a customer's safety, Paschal, an owner, is "liable to an invitee for injuries caused by a latent defect when the owner knows, or in the exercise of ordinary care should have known, about the hazard for a time sufficient to correct the defect." Tarkany,
supra, citing Presley v. Norwood (1973), 36 Ohio St.2d 29, 31; see, also, Restatement of the Law 2d, Torts (1965) 215, Section 343.
 {¶ 21} The duty of ordinary care includes the duties to warn and inspect. An owner must warn of latent defects of which the owner is aware. Perry v. Eastgreen Realty Co. (1978),53 Ohio St.2d 51, 52. Also, the owner must conduct inspections of the premises to discover possible dangerous conditions of which he is unaware. Id. An owner is charged with constructive knowledge of defects which would have been revealed by a reasonable inspection of the premises. State Farm Mut. Auto. Ins. Co. v. Chatham Dev.Corp. (June 6, 1995), Franklin App. No. 94APE08-1243. "What is reasonable under the circumstances of a given case is ordinarily a question for the trier of fact." Tarkany, supra.
 {¶ 22} Three cases offer guidance as to what evidence appellants must introduce to establish a claim of negligent inspection. In Collins v. Emro Marketing Co. (May 11, 1999), Franklin App. No. 98AP-1014, Michael Collins was attempting to get on his bicycle when his foot slipped on an oily substance on the ground in front of the handicapped ramp located on the premises of a Bonded gas station. The trial court granted summary judgment to Emro. The relevant issue in Collins was whether a genuine issue of material fact existed as to whether Emro had constructive notice of the oily substance. In concluding a genuine issue of material fact existed, the Collins court stated:
Although there was little direct evidence as to how long the oil had been on the ground, * * * this court must ascertain whether or not a reasonable trier of fact could find that [Emro] failed to conduct a reasonable inspection, and whether or not [Emro is] deemed to have constructive knowledge of the oil accumulation and therefore had a duty to warn [Collins] of the existence of the oily substance on the ground.
 {¶ 23} After reviewing the evidence of Emro's inspection procedure, the Collins court concluded:
Given the testimony and evidence in this case, and construing it in favor of [Collins], we find that a reasonable trier of fact could conclude that the accumulation was a latent defect that [Emro] should have known about. Therefore, there remains a genuine issue of material fact as to whether their failure to warn [Collins] constituted a breach of duty. For this reason, we find that the trial court's granting of summary judgment was improper insofar as reasonable minds could conclude that [Emro] could be charged with constructive knowledge of the oil accumulation and a corresponding duty to warn. * * *
Id. at 18.
 {¶ 24} In its analysis of the duty to inspect, the Collins
court did not focus on what evidence Mr. Collins presented demonstrating the length of time the substance was present prior to his fall. Instead, upon concluding the oily substance was a latent defect, its analysis was centered on whether Emro was charged with constructive knowledge because it failed to reasonably inspect and, relatedly, failed to warn.
 {¶ 25} In State Farm, supra, L.B. Trucking Co., Inc. (hereinafter "LBT"), was delivering stone to a property being developed by Chatham. LBT drove over a hidden septic tank and sustained damage to its truck. It was undisputed Chatham did not have actual knowledge of the septic tank. Instead, the issue was whether or not Chatham reasonably inspected the premises and whether or not they had constructive knowledge of the septic tank. The Chatham court concluded:
* * * [A]n owner owes the duty to warn of any latent defects of which he knows or should have known. Thus, a reasonable trier of fact could conclude that the septic tank was a latent defect that Chatham should have known about and, therefore, its failure to warn LBT constitutes a breach of duty. For this reason, this court finds that the trial court's granting of summary judgment was improper insofar as reasonable minds could conclude that Chatham's inspection was not reasonable and that Chatham could be charged with constructive knowledge of the septic tank and a corresponding duty to warn.
Id. at 11.
 {¶ 26} Again, in determining whether Chatham knew or should have known about the septic tank, the Chatham court's analysis is devoid of any discussion of how long the septic tank was on the property. Instead, as the septic tank was a latent defect, the Chatham court's decision focused on whether Chatham was charged with constructive knowledge of the septic tank by failing to comply with its duties to inspect and warn.
 {¶ 27} The final case in support is Tarkany, supra. InTarkany, Christopher Tarkany was walking to his dormitory when the light fixture atop a light pole fell and struck him on the head. An examination of the fixture revealed the bracket which held the fixture to the pole was fractured and had weakened progressively over a period of time. Testimony from defendant's director of maintenance and engineering (hereinafter "director") revealed a policy of visual inspection of the fixtures. However, the director stated the visual inspection would not have revealed the defect as the bracket could only be inspected by disassembling the fixture. In affirming the trial court's judgment in favor of defendant, the Tarkany court's analysis focused on defendant's duty to inspect:
Defendant has a duty to conduct reasonable inspections to uncover hidden dangers on its premises. Should defendant fail to use ordinary care and conduct reasonable inspections, defendant will be charged with constructive knowledge of any latent defect which would have been discovered had a reasonable inspection been conducted. The uncontroverted evidence indicates that the defective bracket which caused the fixture to fall from the pole could only have been discovered by dismantling the fixture. * * * Defendant has a duty to undertake reasonable inspections, not to inspect everything that might conceivably cause injury. * * * Under these circumstances, a rational trier of fact could conclude that a routine visual inspection was all that ordinary care required and that defendant did not breach its duty to conduct reasonable inspections by failing to dismantle and inspect some five thousand lighting fixtures when there was no other indication that they were defective.
Id. at 5-6.
 {¶ 28} As with Collins and Chatham, where a party alleges harm arising from a latent defect, the appropriate inquiry focuses on whether a reasonable inspection would have revealed the defect. If the trier of fact determines the defect would have been revealed by a reasonable inspection of the premise, the owner is charged with constructive knowledge of said defect. Accordingly, there is no need to present evidence as to how long the defect was present, as would be the case in a non-latent defect slip and fall. To the contrary, to require evidence of how long a latent defect was present emasculates the well-established principle of constructive notice. Thus, in this matter, if the trier of fact concludes the defect would have been revealed by a reasonable inspection, and appellee did not conduct a reasonable inspection, constructive knowledge of the defect is conferred upon appellee.
 {¶ 29} As stated earlier, appellee owes Mr. Beck a duty of ordinary care, which imposes upon appellee the duty to warn and inspect. In pursuing a theory of liability against appellee for breaching its duty to inspect, appellants are required to present sufficient evidence of whether or not appellee reasonably inspected the premises. At trial, appellants presented the testimony of Pamela Stafford, Community Manager, as evidence of the inspection procedures at Camden Place:
Q. [Plaintiffs' counsel]: And you inspected the Camden Place premises everyday by driving around the property, right?
A. [Ms. Stafford]: Yes.
Q. And the procedure you utilized with regard to your drive-around inspections was you would drive around and eyeball the property and then go back to the leasing office, correct?
A. Yes.
Q. And your drive-around inspections were also started at the leasing office, right?
A. Correct.
* * *
Q. About one time a week you would do a more detailed inspection of individual sections of the property, correct?
A. Correct.
Q. You would inspect, among other things, a section of the property where the clubhouse and office is, correct?
A. Correct.
Q. And your detailed property inspections would involve just walking around the buildings looking at the drain spouts, checking the flashings type things, checking building things, correct?
A. Correct.
* * *
Q. Other than the people who worked, were employed at Camden Place, nobody had any responsibility to inspect the Camden Place premises, correct?
A. Yes.
Q. And you don't remember how many, if any, detailed inspections you made to the clubhouse area in the 30 days before April 19 of '99, the day Mr. Beck was hurt, correct?
A. Correct.
Q. And you don't remember how many, if any, detailed inspections of the clubhouse section you did in the week before Mr. Beck was hurt?
A. Correct.
(Tr. 80-82.)
 {¶ 30} As stated previously, whether appellee conducted a reasonable inspection is a question for determination by the trier of fact. Accordingly, construing the evidence most strongly in appellants' favor, under the circumstances of this case, appellants presented sufficient evidence regarding appellee's inspection procedure to permit the issue to be determined by the trier of fact. Thus, the granting of a directed verdict by the trial court was error. The issue of whether appellee is charged with constructive knowledge of the defect cannot be resolved until a determination is made as to whether appellee's inspection procedure was reasonable. To again quote from Tarkany,
"[s]hould defendant fail to use ordinary care and conduct reasonable inspections, defendant will be charged with constructive knowledge of any latent defect which would have been discovered had a reasonable inspection been conducted." Id. at 5.
 {¶ 31} Accordingly, appellants' assignment of error is hereby sustained, and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.
Judgment reversed and cause remanded.
Bryant, J., concurs.
Sadler, J., dissents.
[1] While appellee concedes the trial court erred in holding the unknown substance was open and obvious, appellee contends it was not the basis for the trial court's decision. Instead, the trial court granted the directed verdict based upon constructive notice.