SNYDER, Appellant,

v.

MYERS, Trustee, et al., Appellees.

[Cite as *Snyder v. Myers*, 190 Ohio App.3d 11, 2010-Ohio-4092.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2009 CA 00315.

Decided Aug. 30, 2010.

J. Reid Yoder and Thomas M. DiCaudo, for appellant.

Edward A. Dark, for appellees.

EDWARDS, Presiding Judge.

{¶ 1} Appellant, Steve Snyder, appeals a summary judgment of the Stark County Common Pleas Court dismissing his complaint for negligence against appellees Linda Myers, Trustee, and Jennifer and Kevin Amstutz.

## STATEMENT OF FACTS AND CASE

{¶ 2} Appellees Jennifer and Kevin Amstutz live on a 72–acre farm located on Dolphin Street in Bolivar, Ohio. The farm includes a single-family residence, a barn, and several outbuildings. The property is owned by the Harvey R. Myers trust. Harvey Myers, who died in 2004, was the father of appellee Jennifer Amstutz and the husband of Linda Myers. Linda Myers is currently trustee of the trust and, according to the trust agreement, has a life estate in the property. Upon Myers's death, Jennifer will become the fee owner of the property. In 2007, keeping up the property became too much for Myers, and she allowed Jennifer and Kevin and their two children to move to the farm. Jennifer and Kevin did not pay rent for the farm but paid utilities and property insurance. Myers continued to pay the property taxes.

{¶ 3} Prior to his death, Harvey Myers often went to auctions and purchased boxes or lots of items in order to purchase a specific item in the box or lot. Many of the remaining items purchased from auctions ended up in the top of his barn. As a result, the barn was full of miscellaneous items and farm equipment he had accumulated over the years.

{¶ 4} Appellant and his friends, Justin and Tricia Durkin, were members of the Summit County Mounted Patrol. Appellant, the Durkins, and several other members of the patrol kept their horses in a barn owned by the city of Green. The group had the opportunity to mow fields for the city of Green to produce hay for their horses. However, their hay rake was in constant need of repair, so they began looking for a new one.

**14**

{¶ 5} Tricia Durkin is the niece of appellee Myers. Justin called Myers to ask whether she had a hay rake in the barn that she would be willing to sell. Myers advised Justin to call Jennifer. Myers told Jennifer that Justin was interested in buying the hay rake. Jennifer did not know how much to charge for the rake, so Myers asked a local auctioneer she had previously worked for how much the rake was worth. He told her that the rake was worth $350 to $375.

{¶ 6} Justin called Jennifer at work on May 27, 2008, and asked to see the rake that evening. At approximately 5:30 p.m. that evening, appellant and Justin arrived at the property to look at the rake.

{¶ 7} The hay rake was stored in the back part of the upper level of the barn. After examining the rake, appellant and Justin decided to purchase it, and they wanted to take the rake with them that evening. Numerous items needed to be moved in order to get the rake out of the barn. One of the items was a roll of carpet that was partially unrolled. Appellant was at one end of the carpet, and two others were at the other end of the roll of carpet. Because of the weight of the carpet roll, appellant could not lift it off the ground. He was "duck walking" forward, pushing his end of the carpet roll, when he fell through a hay drop, landing on the concrete floor below. After the accident, Kevin Amstutz realized that when the carpet was moved, it caught the hook/latch on the wooden cover over the hay drop, and as the carpet moved, so did the cover, exposing the hay drop.

{¶ 8} After appellant fell, the rescue squad was called, and he was transported to the hospital. Appellant wrote a check for the hay rake from the back of the ambulance before leaving the property, and Justin Durkin took the hay rake with him that day. Appellant suffered injuries to his back and neck in the fall.

{¶ 9} On March 30, 2009, appellant filed the instant negligence action against appellees Jennifer and Kevin Amstutz and Frank Myers, trustee of the Harvey Myers Trust. An amended complaint was filed on May 27, 2009, substituting Linda Myers for Frank Myers as the successor trustee of the trust. Appellees moved for summary judgment. The court granted the motion, finding that appellees did not breach any duty of care owed to appellant, an invitee, because they were unaware of the existence of the hay drop through which he fell. Appellant assigns a single error:

{¶ 10} "The trial court failed to properly apply the knowledge requirement of the negligence standard in granting summary judgment to the appellees."

{¶ 11} Appellant argues that the court incorrectly applied the negligence standard in finding that appellees did not know of the hay drop and were therefore not liable, because the applicable standard is whether they knew or should have known of the existence of the hay drop.

{¶ 12} Summary-judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. Therefore, we must refer to Civ.R. 56(C), which provides as follows: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 13} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 14} In order to establish a claim for negligence, a plaintiff must show (1) a duty on the part of defendant to protect the plaintiff from injury, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505; *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614. If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements and if the plaintiff fails to respond as Civ.R. 56 provides, the defendant is entitled to judgment as a matter of law. *Aycock v. Sandy Valley Church of God*, Tuscarawas App. No. 2006 AP 09 0054, 2008-Ohio-105, 2008 WL 115829, ¶ 20.

{¶ 15} In a premises-liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. Id. at

¶ 21, citing *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287.  Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability.  *Shump v. First Continental–Robinwood Assoc.* (1994), 71 Ohio St.3d 414, 417, 644 N.E.2d 291.

{¶ 16} An invitee is defined as a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner.  *Gladon* at 315, 662 N.E.2d 287. As a person invited onto the property to inspect and potentially purchase farm equipment from appellees, it is undisputed that appellant is an invitee.  The owner or occupier of the premises owes the invitee a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, so that its invitees will not unreasonably or unnecessarily be exposed to danger.  *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474.  A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers.  See *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 359, 12 O.O.3d 321, 390 N.E.2d 810.

{¶ 17} The owner must conduct inspections of the property to discover possible dangerous conditions of which he is unaware.  *Beck v. Camden Place at Tuttle Crossing,* Franklin App. No. 02AP–1370, 2004-Ohio-2989, 2004 WL 1277044, ¶ 21.  An owner is charged with constructive knowledge of defects that would have been revealed by a reasonable inspection of the premises.  Id. " 'What is reasonable under the circumstances of a given case is ordinarily a question for the trier of fact.' "  Id., quoting *Tarkany v. Ohio State Univ. Bd. of Trustees* (June 4, 1991), Franklin App. No. 90AP–1398, 1991 WL 101593, * 2.

{¶ 18} In the instant case, Jennifer Amstutz testified in her deposition that she lived on the farm from the time she was 8 years old until she was 21 years old.  She knew that there were several hay drops in the front of the barn, although she was not aware of the one that appellant fell through.  They never used the hay drops, and she had never seen the drops opened.  She did not think that appellant and Justin would take the rake on May 27 because there was too much stuff to move out of the way.  Kevin Amstutz testified that he also was aware of two hay drops in the front of the barn but was not aware of the drop that appellant fell through.  Linda Myers testified that at family gatherings on the farm, the barn was off limits due to dangers presented by ladders, hay drops, and sliding doors.  She was aware of five to six hay drops in the barn and may at one time have been aware of the one appellant fell through, but the drop had been covered by boxes for many years.

{¶ 19} While reasonable minds could conclude that a reasonable inspection of the property would have disclosed the existence of the hay drop, the danger

posed by the hay drop would not have been reasonably discoverable, because the undisputed evidence before the court on summary judgment demonstrated that the cover was on the hay drop on the day in question and was only dislodged immediately before appellant fell through the hay drop. Kevin Amstutz testified in his deposition:

{¶ 20} "Q: As you sit here today, are you able to tell us whether that cover was on the hay drop on May 27th?

{¶ 21} "A: It was on the—the cover was on the floor of the barn on May 27th.

{¶ 22} "Q: Was it correctly in place, in position?

{¶ 23} "A: Yes.

{¶ 24} "Q: And how are you able to tell us that today?

{¶ 25} "A: For as many times as I walked through that section of the barn, not falling through, I would say that yes, the hay drop was correctly installed on the barn floor.

{¶ 26} "Q: Have you formed any opinion on how that hay drop had actually been lifted up or moved?

{¶ 27} "A: Yes.

{¶ 28} "Q: How?

{¶ 29} "A: By the matter of the hook in the center of the hay drop catching on the carpet, and as the carpet was being pulled and pushed, the carpet catches on that hook, slides the hay drop off, and unfortunately, Steve fell through the hole."

{¶ 30} By reasonable inspection of the premises, appellees would have found the hay drop but would have no reason to believe that it would be dangerous when fitted with the cover. Reasonable minds could not conclude that a reasonable inspection of the premises would include sliding a heavy roll of carpet over the hay drop cover to see whether the carpet would catch on the hook and dislodge the cover.

{¶ 31} The assignment of error is overruled.

{¶ 32} The judgment of the Stark County Common Pleas Court is affirmed.

Judgment affirmed.

FARMER and DELANEY, JJ., concur.