[Cite as *Stewart v. ST Performing Arts, L.L.C.*, 2019-Ohio-4508.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Tania Stewart | Court of Appeals No. L-19-1023 |
| Appellant | Trial Court No. CI0201702135 |
| v. | |
| ST Performing Arts, LLC, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: November 1, 2019 |

* * * * *

Taylor R. Ward, for appellant.

Paul R. Bonfiglio, for appellees.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, Tania Stewart, appeals the trial court's January 23, 2019 decision granting summary judgment in favor of appellees ST Performing Arts, LLC and Stranahan Theater Property Holdings, LLC. For the reasons that follow, we affirm the trial court's judgment.

## I. Background

{¶ 2} Appellees, ST Performing Arts, LLC and Stranahan Theater Property Holdings, LLC, own and operate the Stranahan Theater in Toledo, Ohio. On May 4, 2014, appellant Tania Stewart and a friend attended an evening performance of West Side Story at appellees' theater. Upon their arrival at the theater, Stewart's friend dropped her off at the front entrance because she was wearing high-heeled shoes. Stewart's friend then parked her vehicle in the theater's parking lot and walked to the theater separately.

{¶ 3} Stewart testified that, by the time the show concluded around 9:30 p.m., it was "completely dark" outside. Stewart and her friend left the theater through a different door than the one Stewart had entered before the show. After exiting, they began walking toward the parking lot. To reach the parking lot, Stewart and her friend needed to cross a driveway that extended across the entire frontage of the theater. Stewart described the exterior of the theater, including the parking lot, as being so poorly lit that she needed to use lights from moving vehicles to illuminate her intended path.

{¶ 4} After crossing the driveway, Stewart encountered a sidewalk that separated the driveway from the parking lot. Stewart testified that, because she had previously entered the front door of the theater before the show, she was unaware of the presence of the sidewalk as she approached it. She also testified that she was looking down as she was walking, but she did not see the sidewalk "because it was dark" and "[a] car had already gone by," so she did not have any car lights to help her navigate.

2.

{¶ 5} As Stewart stepped toward the sidewalk, her foot landed on the edge of the curb and it "crumbled" underneath the weight of her step. Stewart fell to the ground and immediately felt pain in her right wrist, right elbow, right shoulder, and left knee. She also noticed bleeding from an abrasion incurred on her left knee. Stewart's friend assisted her to the vehicle and transported Stewart home.[1]

{¶ 6} Three days after the incident, Stewart returned to the theater parking lot to take pictures of the sidewalk where she fell. These photographs were utilized in depositions and are part of the record on review.

{¶ 7} Stewart ultimately filed her lawsuit alleging that appellees were negligent by failing to "keep and maintain the premises in a reasonably safe manner, condition and state of repair." Appellees' joint answer generally denied the allegations. Appellees asserted two affirmative defenses relevant to this appeal: (1) "Plaintiff's Complaint is barred or precluded because the condition upon which she fell was an open and obvious and/or commonly encountered condition on the premises," and (2) "if there was a dangerous condition, defendant had no notice of any dangerous condition."

{¶ 8} On November 30, 2018, appellees filed their motion for summary judgment. Appellees initially argued that the "crumbling" condition of the sidewalk was an open and obvious hazard and, therefore, they owed no duty to warn appellant of its presence. Stewart opposed appellees' motion on December 10, 2018. Stewart argued that the

---

[1] Stewart's subsequent medical treatment, including emergency treatment later the same evening, are not relevant to the issues presented in this appeal.

3.

condition of the sidewalk was not an open and obvious condition but instead was a latent defect that should have been discovered by appellees upon reasonable inspection. In their reply brief filed on December 20, 2018, appellees argued that if the dangerous condition of the sidewalk was in fact unobservable, as Stewart argued, they could not have been on notice of the latent defect without performing unreasonable inspections and therefore could not be held liable.

{¶ 9} Stewart's sur-reply, filed January 14, 2019, argued the decaying condition of the premises, including the general area where she fell, was sufficient to have put appellees on notice of the latent defect and, therefore, appellees breached their duty to maintain and repair the latent condition which caused Stewart's fall. Appellees' sur-reply, filed January 22, 2019, countered that Stewart's inconsistent arguments precluded her from proving the causation element of her claim. That is, appellees argued that if the condition of the premises was sufficient to put appellees on notice of a latent defect, then the condition was also an open and obvious hazard.

{¶ 10} On January 23, 2019, the trial court entered an order granting appellees' motion for summary judgment. The trial court concluded that appellees could not be held liable because the dangerous condition of the sidewalk was an "open and obvious defect[]" and, in addition, appellees are "not liable for conditions [they] did not know about and could not know about without taking unreasonably excessive investigative maintenance measures." Under either scenario, the trial court concluded, appellees could

4.

not be held liable for Stewart's claimed injuries. Based on this conclusion, the trial court entered summary judgment in appellees' favor.

{¶ 11} Stewart timely appealed the trial court's judgment and identifies four assignments of error for our review:

1. The trial court erred in granting summary judgment by conflating the open and obvious standard with the duty and breach of an owner to reasonably maintain the premises.

2. The trial court erred in granting summary judgment and finding the fact that the sidewalk would not support [appellant's] weight to be open and obvious.

3. The trial court erred in granting summary judgment and finding no issue of fact that appellee did not breach its duty to reasonably maintain and inspect the premises.

4. The trial court erred in granting summary judgment by finding Appellee could not have breached its duty of care and had been on notice of latent defects unless excessive inspection tests were used, because there were no facts to support the Court's conclusion.

## II. Law and Analysis

{¶ 12} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77

Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 13} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). In doing so, the moving party must point to some evidence in the record in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action[.]" Civ.R. 56(C); *Dresher* at 292-293. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293. The failure to satisfy this reciprocal burden warrants judgment against the nonmoving party. *Id.* at 293.

### 1. The Trial Court did not "conflate" the open and obvious standard with its analysis of appellees' breach of duty.

{¶ 14} In her first assignment of error, Stewart argues the trial court employed an incorrect legal standard when analyzing whether summary judgment was appropriate—which, she argues, caused the trial court to reach the wrong conclusion. That is, Stewart

6.

claims that the trial court erred by "conflating the open and obvious standard with the duty and breach of an owner to reasonably maintain the premises." We disagree.

{¶ 15} To establish a cause of action for negligence, a plaintiff must show "the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998). In premises liability cases, such as this one, the landowner's duty depends upon the status of the injured party at the time of the incident. *Madison v. Raceway Park, Inc.*, 6th Dist. Lucas No. L-08-1279, 2009-Ohio-4068, ¶ 14, citing *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2945, 909 N.E.2d 120, ¶ 10. Here, it is undisputed that Stewart was a business invitee of appellees at the time of the incident. In general, a landowner owes business invitees a duty of ordinary care, which includes (1) a duty not to create a hazard on the premises, (2) a duty to warn of latent or concealed dangers, if the landowner had actual or constructive knowledge of those dangers, and (3) a duty to maintain the premises in a reasonably safe condition. *Ray v. Wal-Mart Stores, Inc.*, 2013-Ohio-2684, 993 N.E.2d 808, ¶ 18 (4th Dist.); *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985) (business owners have "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger.") "While a business owner is not an insurer of a customer's safety * * * an owner, is 'liable to an invitee for injuries caused by a latent defect when the owner knows, or in the exercise of ordinary care should have known, about the hazard for a time sufficient to correct the

7.

defect.'" *Beck v. Camden Place at Tuttle Crossing*, 10th Dist. Franklin No. 02AP-1370, 2004-Ohio-2989, ¶ 20. "A premises owner or occupier will be charged with constructive notice of hazards * * * that would have been revealed by a reasonable inspection." *Ray* at ¶ 18, citing *Hansen v. Wal-Mart Stores, Inc.*, 4th Dist. Ross No. 07CA2990, 2008-Ohio-2477, ¶ 11.

{¶ 16} But, "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, paragraph one of the syllabus, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968). "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Id.* at ¶ 5, citing *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). When courts apply the open and obvious doctrine, "they must focus on the fact that the doctrine relates to the threshold issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong* at ¶ 13.

{¶ 17} Turning to the trial court's analysis in this case, the trial court noted in its judgment entry that if Stewart was correct that appellees had actual or constructive notice of a latent defect on its property given the "visible" nature of the "disrepair of the sidewalk at issue"—i.e., "the sidewalk was crumbling, overgrown with plant life, and

8.

eroding"—then "[Stewart] should have also seen these obvious conditions and avoided them. The theater is not liable to its patrons for *such* open and obvious defects, and it is also not liable for conditions it did not know about and could not know about without taking unreasonably excessive investigative maintenance measures." (Emphasis added.) Stewart argues that the trial court's analysis was flawed because it failed to recognize that "[w]hile a business owner should be expected to be on notice of the danger and appreciate it and be aware of the general conditions [of the property], a business invitee is only to discover the 'obvious' dangers."

{¶ 18} In essence, Stewart is arguing that the trial court's analysis improperly assumes that where the condition of a property provides constructive notice to the landowner of the existence of a latent defect, then that defect was *necessarily* open and obvious to business invitees. While we agree with the general proposition that a defective condition is not "open and obvious" just because it could have been discovered by the landowner through reasonable inspection and maintenance of the property— indeed, if that were true, a landowner could never be held liable under a theory of constructive notice—we disagree that the trial court's analysis assumed otherwise. That is, the trial court did not improperly assume, as Stewart argues, that a business invitee and a landowner have an equal duty to inspect the premises for latent defects. Rather, the trial court concluded that the dangerous condition of the sidewalk was, in fact, an "open and obvious defect" because "the sidewalk was crumbling, overgrown with plant life, and eroding." The trial court's ruling with respect to "open and obvious" was based upon

"the nature of the dangerous condition itself." *Armstrong* at ¶ 13. An "open and obvious" defect—by its very nature—is not, and cannot be, a "latent" defect.

{¶ 19} Moreover, we interpret the trial court's statement that appellees are "not liable for conditions [they] did not know about and could not know about without taking unreasonably excessive investigative maintenance measures" as an alternative basis for granting summary judgment. That is, the trial court essentially ruled that, even if it had not already determined that the open-and-obvious doctrine negated appellees' duty of ordinary care, there was no evidence that appellees breached their duty to maintain the premises in a reasonably safe condition. Although it would have been clearer if the trial court had framed its conclusion in this manner, we believe that the judgment entry—read as a whole—reflects that the trial court employed the proper analysis.

{¶ 20} Stewart's first assignment of error is, therefore, not well-taken.

**2. Appellees had no duty to warn Stewart of an open and obvious danger.**

{¶ 21} Stewart's second assignment of error argues that the trial court erred in finding the defective condition of the sidewalk was open and obvious. Stewart maintains that the sidewalk's inability to support her weight was a latent defect, rather than an open and obvious danger.

{¶ 22} We have previously held that "[t]he issue of whether a risk was open and obvious may be decided by the court as a matter of law when only one conclusion can be drawn from the established facts." *Semprich v. Cty. of Erie*, 6th Dist. Erie No. E-12-070,

2013-Ohio-3561, ¶ 12. On the other hand, "where reasonable minds could reach different conclusions as to the obviousness of the risk, the issue should be resolved by a jury." *Id.*

{¶ 23} When deciding this issue, courts must consider whether the risk *itself* was observable. *Id.* That is, "[t]he question of whether a danger is open and obvious is an objective one." *Hallier v. Hopkins*, 6th Dist. Sandusky No. S-15-024, 2016-Ohio-2661, ¶ 5, citing *Goode v. Mt. Gillion Baptist Church*, 8th Dist. Cuyahoga No. 87876, 2006-Ohio-6936, ¶ 25. "The fact a plaintiff was unaware of the danger is not dispositive of the issue." *Id.* Instead, courts must consider "whether in light of the specific facts and circumstances of the case, an objective, reasonable person would deem the danger open and obvious." *Id.*, citing *Stanfield v. Amvets Post No. 88*, 2d Dist. Miami No. 06CA35, 2007-Ohio-1896, ¶ 12. "Even when an invitee does not actually see the object or danger until after he or she falls, no duty exists when the invitee could have seen the object or danger if he or she had looked." *Semprich* at ¶12.

{¶ 24} Moreover, "darkness due to lack of illumination at nighttime is not an attendant circumstance that creates an exception to the open and obvious doctrine[.]" *Butler v. Cleveland Clinic*, 8th Dist. Cuyahoga No. 105457, 2018-Ohio-93, ¶ 17; *accord Hunter v. Jamin Bingo Hall*, 6th Dist. Lucas No. L-08-1084, 2008-Ohio-4485, ¶ 13 ("darkness is a naturally occurring event and not an attendant circumstance"). An "attendant circumstance" is "any distraction that would come to the attention of an invitee in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." *Hunter at* ¶ 12. In contrast, "darkness *increases* rather than

reduces the degree of care an ordinary person would exercise." *McCoy v. Kroger Co.*, 10th Dist. Franklin No. 05AP-7, 2005-Ohio-6965, ¶ 16 (emphasis added). For this reason, Ohio courts consistently recognize that "[d]arkness is always a warning of danger, and for one's own protection it may not be disregarded." *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968), paragraph three of the syllabus.

{¶ 25} Accordingly, although Stewart testified that she could not observe the sidewalk when she stepped on it—"because it was dark," the parking lot was poorly lit, and she did not have any car lights to help her navigate—the nighttime darkness of the parking lot is largely irrelevant for our analysis. The relevant issue is whether the dangerous condition of the sidewalk was otherwise "open and obvious" at the time of Stewart's fall.

{¶ 26} At her July 17, 2017 deposition, Stewart testified regarding the condition of the sidewalk that she encountered on appellees' premises and the circumstances under which she fell. She stated:

> Well, I stepped on the edge of [the curb] and it crumbled. I didn't know I
> was going to step on the edge of it, you know, because I couldn't see where
> it was so it made me – like it broke away under my foot. I stepped – I was
> walking and I kept it the same level and it pulled me forward when I
> stepped on it, it crumbled under my foot and pulled me forward.

During that same deposition, Stewart identified exhibits A and B as photographs taken three days after the incident. She testified that exhibit B shows the curb that "crumbled"

12.

under her weight, and she circled where her fall occurred. Stewart testified that exhibit A, on the other hand, depicted "the continuation of the crumbled walkway" but did not show the area where she fell. Exhibits A and B are therefore photographs of the same, crumbling curb, but only exhibit B shows the area where she fell.

{¶ 27} Stewart elaborated on the condition of the curb in her affidavit attached to her opposition to appellees' motion for summary judgment. There she describes the curb seen in exhibit B as "eroding and crumbling."

{¶ 28} Stewart argues, however, that these photos were *after* her fall, and there is no evidence that conclusively establishes the condition of the curb *before* her fall. But, even if we assume that the precise area where Stewart stepped did not appear to be crumbling before the accident, the evidence establishes that she encountered a visibly "eroding and crumbling" curb.[2] Despite the open and obvious nature of the crumbling sidewalk, Stewart nonetheless stepped on the edge of it—and it crumbled under her foot, which is not surprising given the overall condition of the curb as depicted in the photographs. Stewart could have easily avoided this hazard by stepping *over* the visibly crumbling edge of the curb. She did not. Although she testified that she "didn't know [she] was going to step on the edge of it"—because it was dark and she could not see

---

[2] We note Stewart's argument in her reply brief that "she has been quite clear that the exact part of the sidewalk she stepped on crumbled under her foot, not that it was crumbled already." Our review of her testimony and affidavit, however, does not comport with this statement.

13.

where she was stepping—as discussed, darkness "is not an attendant circumstance that creates an exception to the open and obvious doctrine[.]" *Butler* at ¶ 17.

{¶ 29} We therefore conclude that, as a matter of law, only one conclusion can be drawn from the established facts: the dangerous condition of the crumbling sidewalk was an open and obvious hazard, which negates the appellees' duty of care.

{¶ 30} We reached a similar conclusion in *Madison v. Raceway Park, Inc.*, 6th Dist. Lucas No. L-08-1279, 2009-Ohio-4068. There, the plaintiff, a business invitee of the defendant, was returning to her vehicle in defendant's parking lot. Her exit required her to traverse a gravel path. While it had not rained the day of the incident, rain from earlier in the week had left a puddle on the gravel pathway. The plaintiff could not continue on the path without getting her shoes wet so she chose to exit the gravel path and walk alongside it past the puddle. When she went to return to the path which appeared dry after passing the puddle, both of her feet began to sink, causing her to fall with resulting injuries. The defendant, requesting summary judgment, argued the recent rain and water on the ground would put a reasonable person on notice of an open and obvious danger that the ground could be soft. In opposition, the plaintiff argued that because the mud was concealed by the gravel over the path, it was not open and obvious but represented a latent defect. The trial court granted summary judgment in the defendant's favor finding the condition causing plaintiff's fall was open and obvious.

{¶ 31} On appeal, we affirmed the trial court's decision. We held that while the danger was indeed the mud concealed by the gravel path, the surrounding facts and

14.

circumstances—including the recent rain and general puddling of water along the gravel path— "gave sufficient warning to a reasonable person that the area might be muddy and it could cause someone to fall." *Raceway Park* at ¶ 23. We therefore concluded that the danger was open and obvious.

{¶ 32} Here, similar to our conclusion in *Raceway Park,* we find the hazardous condition of the sidewalk was open and obvious. The crumbling and decayed condition of the curb, as shown in photographs Stewart provided, would have put a reasonable person on notice that the edge of the curb may crumble if stepped on. Even if we assume that Stewart stepped on a portion of the curb that had not yet crumbled, the crumbling condition of the surrounding curb was sufficient to put a reasonable person on notice that any portion of that curb might crumble if stepped upon and cause a fall.

{¶ 33} We therefore find that the hazardous condition of the sidewalk was open and obvious, and appellees owed no duty to Stewart as a matter of law. Stewart's second assignment of error is found not well-taken.

{¶ 34} Finally, given that we have concluded that appellees owed no duty to Stewart as a matter of law, her third and fourth assignments of error—which argue that appellees breached their duty to maintain the property in a reasonable condition—are moot, and we decline to address them.

15.

### III. Conclusion

**{¶ 35}** We find that, as a matter of law, the hazard Stewart encountered was open and obvious, and appellees therefore owed no duty to Stewart. Stewart's first and second assignments of error are not well-taken, and her third and fourth assignments of error are moot.

**{¶ 36}** The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal under App. R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                          _____
                                                          JUDGE
Thomas J. Osowik, J.

                                          _____
Christine E. Mayle, P.J.                            JUDGE
CONCUR.

                                          _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.